UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VEGA CAPITAL LONDON LIMITED and ADRIAN SPIRES,<br><br>*Movants,*<br><br>v.<br><br>GLENCORE LTD.,<br><br>*Respondent.* | Misc. Case No. 1:24-139<br><br>(Arising from Civil Case No. 1:20-cv-04577 in the United States District Court for the Northern District of Illinois) |

**VEGA CAPITAL LONDON LIMITED AND
ADRIAN SPIRES' MEMORANDUM IN SUPPORT OF
<u>THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      The May WTI Contract Is Traded at Negative Prices on April 20, 2020 .......................... 2

II.     A Putative Class Action Was Brought Against Vega, Spires, and Ten Traders in the Northern District of Illinois.................................................................................. 3

III.    Vega and Spires Served a Narrow Subpoena on Glencore Ltd. ........................................ 5

IV.    Vega and Spires' Efforts to Meet and Confer with Glencore's Counsel Were Unsuccessful ................................................................................................................. 6

STANDARD OF REVIEW .......................................................................................................7

DISCUSSION ........................................................................................................................8

I.      The Subpoena Seeks Information That Is Relevant and Proportional to the Needs of the Case.................................................................................................................... 8

II.     The Subpoena Does Not Subject Glencore to an Undue Burden ..................................... 11

III.    Any Trade Secrets or Confidential Information Will Be Protected by The Illinois Court's Existing Protective Order.................................................................................. 13

CONCLUSION....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*CFTC v. Parnon Energy, Inc.*,
    2013 WL 5882921 (S.D.N.Y. Oct. 25, 2013), *aff'd*, 593 F. App'x 32 (2d Cir. 2014) ..............9

*Citizens Union of City of New York v. Attorney General of New York*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017)...................................................................................8, 11

*Conopco, Inc. v. Wein*,
    2007 WL 2438390 ........................................................................................................................13

*F.T.C. v. Thomas Jefferson Univ.*,
    2020 WL 3034809 (E.D. Pa. June 5, 2020) ............................................................................11

*Fed. Open Mkt. Comm. Of Fed. Reserve Sys. v. Merrill*,
    443 U.S. 340 (1979).................................................................................................................13

*GEICO v. Mayzenberg*,
    2018 WL 10517074 (E.D.N.Y. June 29, 2018) .......................................................................12

*In re Biovail Corp. Sec. Litig.*,
    247 F.R.D. 72 (S.D.N.Y. 2007) .................................................................................................8

*In re Countrywide Fin. Corp. Sec. Litig.*,
    2010 WL 1640188 (S.D.N.Y. Apr. 12, 2010)..........................................................................13

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003)......................................................................................................8

*In re Honeywell Int'l Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ............................................................................................11

*In re Subpoena Duces Tecum Served on Bell Commc'n. Rsch.*,
    1997 WL 10919 .......................................................................................................................14

*In re Subpoenas to Plains All American Pipeline, L.P.*,
    No. 13-mc-2975, 2014 WL 204447 (S.D. Tex. Jan. 17, 2014)......................................9, 12, 14

*Kohen v. Pacific Investment Mgmt. Co.*,
    571 F.3d 672 (7th Cir. 2009) ....................................................................................................9

*Malibu Media, LLC v. Doe*,
    2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016).........................................................................7

*Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*,
　596 F. Supp. 3d 1076 (N.D. Ill. 2022) ...................................................................................4

*Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*,
　648 F. Supp. 3d 980 (N.D. Ill. 2022) .....................................................................................4

*Mish International Monetary Inc. v. Vega Capital London Limited, et al.*,
　Case No. 1:20-cv-4577 (N.D. Ill.) .........................................................................................1

*Premium Plus Partners, L.P. v. Davis*,
　2008 WL 3978340 (N.D. Ill. Aug. 22, 2008) .......................................................................10

*Rahman v. Smith & Wollensky Restaurant Group, Inc.*,
　2007 WL 1521117 (S.D.N.Y. May 24, 2007) .....................................................................10

*Rinaldi v. NICE*,
　2020 WL 4340640 (S.D.N.Y. July 27, 2020) ......................................................................12

*Rios v. Ramage*,
　2020 WL 6701206 (D. Kan. Nov. 13, 2020) .......................................................................13

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy*,
　LLC, 255 F. Supp. 3d 700 (E.D. Mich. 2017), *aff'd*, 2017 WL 3116261 (E.D. Mich. July 21, 2017) ...................................................................................................................................13

*Vitol, Inc. v. Vega Capital London Limited*,
　Civil Action No. 1:24-cv-1942 (N.D. Ill.) .............................................................................5

**Statutes**

7 U.S.C. § 13(a)(2) ........................................................................................................................4

Commodity Exchange Act ..............................................................................................................4

Sherman Act ................................................................................................................................3, 4

**Rules**

Fed. R. Civ. P. 45(a)(1)(D) ............................................................................................................7

Fed. R. Civ. P. 45(d)(3)(B)(i) ......................................................................................................13

Vega Capital London Limited ("Vega") and Adrian Spires ("Spires") submit this memorandum in support of their motion to compel Glencore Ltd. ("Glencore") to produce documents in response to a subpoena *duces tecum*. Vega and Spires seek the production from Glencore of a limited set of documents needed to defend themselves in a putative class action pending in the United States District Court for the Northern District of Illinois. *See Mish International Monetary Inc. v. Vega Capital London Limited, et al.*, Case No. 1:20-cv-4577 (N.D. Ill.).[1]

## INTRODUCTION

On April 20, 2020, within a few months of the onslaught of a global pandemic, the West Texas Intermediate crude oil futures contract with a May 2020 expiration ("May WTI Contract") traded at negative prices on the New York Mercantile Exchange ("NYMEX"). It was the first time in the history of NYMEX that a WTI futures contract had traded at negative prices. Vega and Spires are now seeking to defend themselves from a putative class action in the United States District Court for the Northern District of Illinois accusing them and ten traders in the United Kingdom of causing those negative prices. The defense of Vega and Spires in that lawsuit, among other things, is that the operation of natural laws of supply and demand (and not market manipulation) caused that price drop. In the beginning of the pandemic, there was a sharp drop in demand for oil and a vast over-supply of it. That lack of demand was particularly true for the May WTI contract, which was in the penultimate day of trading and which required any holder at the expiry of the contract on April 21 to accept physical delivery of the oil at Cushing,

---

[1] Concurrent with this motion, with the motion practice currently pending before the district court in the Northern District of Illinois with respect to a nearly identical subpoena, Vega and Spires are separately filing a motion to transfer this miscellaneous action to the United States District Court for the Northern District of Illinois.

1

Oklahoma. To make matters worse, storage space in Cushing was nearly exhausted at the time, leaving few with a compelling reason to buy a May WTI contract.

The putative class action against Vega and Spires is now in the midst of discovery. To prove (among other things) that there was no demand in the marketplace on April 20 for the May WTI contract and therefore no "artificial price," Vega and Spires issued narrowly-tailored subpoenas to 28 of the largest traders on NYMEX, including Glencore. The subpoenas sought only documents "sufficient to show" how and when those companies traded the May WTI Contract on April 20 and 21, 2020. From the discovery responses of these 28 companies, Vega and Spires expect they will be able to prove that even the largest and most sophisticated participants in the market had little-to-no desire to purchase the May WTI Contract and that their relative lack of demand illustrates why the prices for this contract were negative on April 20.

After nine conferences with Vega and Spires about the subpoena, Glencore, one of the world's leading marketers of crude oil and oil products, has indicated that it does not intend to comply with the subpoena. For the reasons set forth below, the Court should compel Glencore to comply with the subpoena and produce responsive documents.

## BACKGROUND

**I.    The May WTI Contract Is Traded at Negative Prices on April 20, 2020**

On April 20, 2020, the May WTI Contract on NYMEX began the day trading at $17.73 per barrel, entered into negative prices at 1:08 pm (CT), and ultimately finished the trading day on 1:30 pm (CT) at -$37.63 per barrel. Kelly Decl., Ex. 1 at 1, 3, 8. Under the terms of the May WTI Contract, parties holding the futures contract were generally expected to sell it by the contract's expiry on April 21, 2020 or take physical possession of the oil in May. *Id.* at 2. Each contract is for a thousand barrels of oil. *Id.* at 6. The physical delivery requirement of the

contract provided speculators holding the May WTI Contract with a strong incentive to sell the contract before its expiry on April 21.

The staff of the Commodity Futures Trading Commission prepared a lengthy interim report describing "the fundamental factors of supply, demand, and storage as well as technical trading factors surrounding the May Contract . . ." in April 2020. *Id.* at 2. The CFTC staff described how an "already oversupplied global crude oil market was hit with an unprecedented reduction in demand caused by the novel coronavirus pandemic" and how "[u]ncertainty over both the magnitude and duration of that loss of demand caused increased volatility to historic levels." *Id.* Among other things, there were concerns about whether "OPEC Plus or other global producers could respond quickly to the reduction in demand," *id.*, and whether there would be any storage available in Cushing, Oklahoma, where the May WTI Contract required oil to be delivered, *id.* Indeed, "[i]n or about late March and early April, NYMEX and some industry participants began preparing for the prospect of negative WTI crude oil prices, changing technology and pricing models to account for this contingency." *Id.* at 2-3. However, after its lengthy review, the CFTC staff declined to "identify the root cause(s) of any price movement of the WTI Contract leading up to, on, or around April 20." *Id.* at 1 n.1. That task has been left to Vega, Spires, and the other parties in the Illinois case.

## II. A Putative Class Action Was Brought Against Vega, Spires, and Ten Traders in the Northern District of Illinois

Since August 2020, Mish International Monetary Inc. ("Mish"), a California company specializing in precious metals and rare coins, has been pursuing a putative class action against Vega. Mish later expanded its complaint to name Vega's owner, Adrian Spires, and ten traders associated with Vega as defendants in the case. In the current operative complaint, Mish asserted eight claims against them, including a Sherman Act antitrust conspiracy claim and a

3

number of Commodity Exchange Act market manipulation claims. Ex. 2 at ¶¶ 346-393. This case is pending before the Honorable Manish S. Shah in the U.S. District Court for the Northern District of Illinois.

The Illinois case has a lengthy procedural history, including two decisions on motions to dismiss the complaint. *See Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 596 F. Supp. 3d 1076 (N.D. Ill. 2022); *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 648 F. Supp. 3d 980 (N.D. Ill. 2022). For purposes relevant here, for a market manipulation claim under 7 U.S.C. § 13(a)(2), a plaintiff must show "(1) the defendants possessed the ability to influence prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price." *Mish Int'l Monetary Inc.*, 596 F. Supp. 3d at 1095 (emphasis added). For a Sherman Act claim, a plaintiff must prove: "(1) defendants had a contract, combination, or conspiracy ('an agreement'); (2) as a result, trade in the relevant market was unreasonably restrained; and (3) [the plaintiff was] injured." *Id.* at 1092 (emphasis added).

The case is now in merits and class certification discovery, and Vega and Spires intend to show, among other things, that no artificial price existed and there was no restraint of trade on the market for the May WTI Contract. To prove that no artificial price existed and that the lack of demand/over-supply of oil caused the drop in prices, Vega and Spires issued narrowly-tailored subpoenas to 28 of the largest traders in the NYMEX market.[2] The purpose of serving

---

[2] The traders are: (1) Bank of China Limited; (2) Barclays Bank PLC; (3) BASF Intertrade Corporation; (4) BlackRock, Inc.; (5) BNP Paribas S.A.; (6) BP Products North America, Inc.; (7) Capital One National Association; (8) Chevron USA Inc.; (9) Citadel Securities LLC; (10) Citigroup Inc.; (11) ConocoPhillips Company; (12) ExxonMobil Oil Corporation; (13) Glencore Ltd.; (14) Goldman Sachs Group; (15) ING Capital Markets LLC; (16) JP Morgan Chase Bank NA; (17) Macquarie Inc.; (18) Mercuria Energy America LLC; (19) Mitsubishi International Corporation; (20) Morgan Stanley; (21) Nomura Securities International Inc.; (22) Pacific

subpoenas on these 28 large traders was to show that the lack of demand was evidence of a market-wide phenomenon and not merely anecdotal evidence that could be cast aside. The subpoenas were served on different types of large traders, including global financial institutions, multinational oil companies, commodities trading firms, and other large institutions. Vega and Spires kept the Illinois federal district court informed of the 28 subpoena recipients, the nature of the subpoenas, and the reasons why those subpoenas were being pursued. *See, e.g.*, Ex. 3 at 3-5 (joint status report filed in the Illinois case on December 14, 2023); Ex. 4 (March 1, 2024 joint status report). One subpoena recipient, Vitol Inc., filed a motion to quash in the United States District Court for the Southern District of Texas. Vitol subsequently consented to the motion being transferred to the Illinois court, and that motion is currently pending before Judge Shah. *See Vitol, Inc. v. Vega Capital London Limited*, Civil Action No. 1:24-cv-1942 (N.D. Ill.).

Mish filed its motion for class certification on February 19, 2024. Defendants' response to Mish's motion is due on June 6, 2024 and Mish's reply is due on August 5, 2024.

### III. Vega and Spires Served a Narrow Subpoena on Glencore Ltd.

Vega and Spires' subpoena to Glencore Ltd. was served on its registered agent on November 17, 2023, with a compliance date of December 18, 2023. Ex. 5. Glencore Ltd. is a subsidiary of Glencore plc, "one of the world's leading marketers of crude oil and oil products" which supplies "millions of barrels of oil every day to customers around the world."[3] Glencore plc sold 535 million barrels of crude oil and 544 million barrels of oil products via its marketing

---

Investment Management Company; (23) PetroChina International (America) Inc.; (24) Phillips 66 Co.; (25) Repsol Trading USA LLC; (26) Shell Trading (US) Company; (27) Socar Trading North America LLC; and (28) Vitol Incorporated.

[3]     *See* glencore.com/what-we-do/energy/oil (last visited March 22, 2024).

business,[4] and announced earnings of $34 billion.[5] Glencore Ltd. is headquartered at 330 Madison Avenue, New York, New York 10017.

The subpoena contains nine requests for documents sufficient to show Glencore's involvement in the May WTI Contract on the last two days of trading on April 20 and 21, 2020. The following categories reflect the scope and content of the nine requests:

- Documents sufficient to show Glencore's trades and investments in the May WTI Contract from April 20 to April 21, 2020, including the amount and timing of any trades and the amount of any short or long positions. *See* Ex. 5 at Requests 1-3.

- Documents sufficient to show whether Glencore knew or believed that the May WTI Contract could trade at negative prices and Glencore's trading strategy in connection with that contract. *See id.* at Requests 4-6.

- Documents sufficient to show whether Glencore accepted (or considered accepting) the physical delivery of any oil covered by the May WTI Contract. *See id.* at Request 7.

- Documents sufficient to show communications between Glencore and third parties and other information relating to the May WTI Contract. *See id.* at Requests 8-9.

## IV. Vega and Spires' Efforts to Meet and Confer with Glencore's Counsel Were Unsuccessful

Before filing with this motion, Vega and Spires met and conferred with counsel for Glencore on nine separate occasions to determine whether the parties could reach an agreement on the production required by the subpoena. On December 6 and January 3, 2024, Vega and Spires agreed to multiple extensions for Glencore to respond to the subpoena and explained the reasoning behind the subpoena. On January 12, 2024, Glencore sent Vega and Spires its

---

[4] *Id.*

[5] *See* Glencore Annual Report 2022, https://www.glencore.com/.rest/api/v1/documents/ded10fa92974aa388a43aa9f86f483e9/GLEN-2022-Annual-Report.pdf (last visited March 22, 2024).

business,[4] and announced earnings of $34 billion.[5] Glencore Ltd. is headquartered at 330 Madison Avenue, New York, New York 10017.

The subpoena contains nine requests for documents sufficient to show Glencore's involvement in the May WTI Contract on the last two days of trading on April 20 and 21, 2020. The following categories reflect the scope and content of the nine requests:

- Documents sufficient to show Glencore's trades and investments in the May WTI Contract from April 20 to April 21, 2020, including the amount and timing of any trades and the amount of any short or long positions. *See* Ex. 5 at Requests 1-3.

- Documents sufficient to show whether Glencore knew or believed that the May WTI Contract could trade at negative prices and Glencore's trading strategy in connection with that contract. *See id.* at Requests 4-6.

- Documents sufficient to show whether Glencore accepted (or considered accepting) the physical delivery of any oil covered by the May WTI Contract. *See id.* at Request 7.

- Documents sufficient to show communications between Glencore and third parties and other information relating to the May WTI Contract. *See id.* at Requests 8-9.

## IV. Vega and Spires' Efforts to Meet and Confer with Glencore's Counsel Were Unsuccessful

Before filing with this motion, Vega and Spires met and conferred with counsel for Glencore on nine separate occasions to determine whether the parties could reach an agreement on the production required by the subpoena. On December 6 and January 3, 2024, Vega and Spires agreed to multiple extensions for Glencore to respond to the subpoena and explained the reasoning behind the subpoena. On January 12, 2024, Glencore sent Vega and Spires its

---

[4] *Id.*

[5] *See* Glencore Annual Report 2022, https://www.glencore.com/.rest/api/v1/documents/ded10fa92974aa388a43aa9f86f483e9/GLEN-2022-Annual-Report.pdf (last visited March 22, 2024).

objections to the subpoena. Ex. 6. Among other objections raised, Glencore objected to the subpoena as "harassing, unduly burdensome, and not proportionate to the needs of the Action," and further objected "to the extent it may require Glencore to produce documents reflecting trade secrets or other confidential research, development, or commercially sensitive information." *Id.* at p. 2-3.

Following the receipt of Glencore's objections, Vega and Spires met and conferred with Glencore four times about Glencore's objections and searched to see if a compromise could be reached, including on January 22, February 7, February 16, and February 23. The parties discussed potential options, but none of those discussions resulted in any agreement by the parties. On February 23, 2024, counsel for Glencore informed Vega and Spires' counsel that Glencore did not intend to produce any documents in response to the subpoena. On March 4, 2024, Vega and Spires informed Glencore that they intended to file a motion to compel, after which the parties met and conferred three more times on March 8, March 15, and March 18 and discussed various proposals to come to an agreement, but to no avail.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 45 allows parties to subpoena nonparties for documents relevant to a civil suit. Fed. R. Civ. P. 45(a)(1)(D). Subpoenas issued under Rule 45 are "subject to the relevance requirement of Rule 26(b)(1)," which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016). "The party seeking discovery bears the initial burden of proving the discovery is relevant, and then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." *Citizens Union of City of New York v. Attorney General of New York*, 269 F. Supp.

7

3d 124, 139 (S.D.N.Y. 2017) (internal citations omitted)); *see also In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007) ("where, as here, [information] is sought from third parties, the Court must weigh the probative value of the information against the burden of production on said non-parties."). Motions to compel are "entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003).

## DISCUSSION

The Court should compel Glencore to comply with Vega and Spires' subpoena for the following three reasons: (i) the subpoena seeks information that is relevant and proportional to the needs of the Illinois case; (ii) the subpoena does not subject Glencore to an undue burden; and (iii) any trade secrets or confidential information can be protected by the Illinois court's existing protective order.

### I. The Subpoena Seeks Information That Is Relevant and Proportional to the Needs of the Case

Vega and Spires seek information that is directly relevant and narrowly tailored to the merits and class certification issues in the Illinois case. On the merits, the subpoena seeks information that will help to establish that there was no artificial price for the May WTI Contract on April 20, 2020 and no restraint on trade. As one of the world's leading marketers of crude oil and oil products, Glencore possesses important information on why there was not more demand for the May WTI Contract on April 20, 2020. Why did a large oil trader like Glencore not purchase the May WTI Contract in greater amounts when the purchase price was zero? When the price dropped to -$37.63 per barrel, a trader like Glencore theoretically could have purchased contracts covering a million barrels of oil and immediately made over $37 million from the transaction – even before selling the oil at some later point. Why did Glencore not "buy" more at negative prices? If it did purchase the May WTI Contract at zero or negative prices, why did

8

Glencore and other similar companies not make these purchases in sufficient quantities to drive the price of oil futures contracts up?

The contemporaneous evidence of Glencore's activity sought by the subpoena (including its trading records and relevant email and text messages) will answer these questions. Vega and Spires believe that the evidence from Glencore will (i) prove there was no significant demand for the May WTI Contract on April 20 amongst the largest traders; and (ii) demonstrate *why* there was no significant demand for that contract. That evidence, in turn, will help prove in the Illinois case that there was no artificial price or restraint of trade on April 20. In market manipulation cases, courts have found the production of information from nonparty traders to be relevant, stating, in part:

> [T]he WTI market's alleged switch between contango and backwardation is central to Plaintiffs' manipulation and monopolization claims. Far from being irrelevant, documents indicating the perceptions and reactions of 'innocent' nonparty traders are highly probative of whether this phenomenon occurred and how it impacted the market. Information about the nonparties' activities before and after the alleged manipulation is also relevant to provide a benchmark for activity in a nonmanipulated market.

*CFTC v. Parnon Energy, Inc.*, 2013 WL 5882921, at *3 (S.D.N.Y. Oct. 25, 2013), *aff'd*, 593 F. App'x 32, 36 (2d Cir. 2014); *see also In re Subpoenas to Plains All Am. Pipeline, L.P.*, No. 13-mc-2975, 2014 WL 204447, at **4-5 (S.D. Tex. Jan. 17, 2014) ("[Nonparty's] role in the physical and futures market during the time period at issue, which would yield or could lead to the discovery of evidence regarding deliverable supplies and market conduct, is discoverable in the [underlying] enforcement and class actions.") (discussing *Parnon*).

At the same time, this kind of discovery will further demonstrate why the plaintiff's claims in the Illinois case are not typical and why individual issues will predominate over common issues. *See, e.g., Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 679 (7th Cir. 2009) (suggesting that a class action defendant in a market manipulation case could "depose a random

9

sample of class members to determine how many were net gainers from the alleged manipulation and therefore were not injured, and if it turns out to be a high percentage he could urge the district court to revisit its decision to certify the class"). Mish, the plaintiff in the Illinois case, is a rare coin dealer whose website does not mention the trading of contracts for any oil futures commodities. By contrast, Glencore is "one of the world's leading marketers of crude oil and oil products" which earned $11.6 billion in 2020.[6] Glencore has little in common with Mish.

The discovery sought is relevant to assessing whether Mish's claims are typical of the putative class. *See Premium Plus Partners, L.P. v. Davis*, 2008 WL 3978340, at *4 (N.D. Ill. Aug. 22, 2008) (finding that use of a "variety of trading strategies" among investors in the treasury market precluded finding of typicality); *see also Rahman v. Smith & Wollensky Rest. Grp., Inc.*, 2007 WL 1521117, at *3 (S.D.N.Y. May 24, 2007) ("Pre-certification discovery is often necessary to determine whether certification is appropriate."). If Vega and Spires were not allowed to subpoena or question large trading firms about how they traded and their relative lack of demand for the May WTI Contract, Vega and Spires would be missing evidence important to their defenses that Mish's claims are not typical, that individual issues will predominate over common issues, that there was no artificial price, and that there was no restraint of trade.

The discovery sought by Vega and Spires, including the trading data sought by Requests 1 through 3, cannot be obtained from other sources. As Vega and Spires reported to the district court in the Illinois case, other parties served subpoenas on CME Group Inc. (the owner of NYMEX), seeking trading information for the May WTI Contract bought or sold on April 20, 2020. Ex. 7 at 3. CME initially produced the trading information in anonymized format and

---

[6] *See* Glencore 2020 Annual Report, https://www.glencore.com/.rest/api/v1/documents/3505497f3cb94b24f0c79f5ba32b293b/Glencore_AR20_Interactive+%281%29.pdf (last visited March 22, 2024).

10

later produced unmasked information for some traders. *Id*. However, the CME represented to counsel for the ten traders in the Illinois case that it cannot necessarily track trader information to individual companies because traders trade through a process in which the individual traders are identified through their individual Tag50 ID and not necessarily through their corporate affiliation. *Id*. The subpoena to Glencore is the only way to obtain comprehensive information about Glencore's trading on April 20, 2020. It is undisputed that the remaining requests seek discovery that cannot be obtained from another source, in whole or in part.

## II. The Subpoena Does Not Subject Glencore to an Undue Burden

Compliance with the subpoena would not impose an undue burden on Glencore. In determining whether the burden imposed by a subpoena is undue, courts consider factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Citizens*, 269 F. Supp. 3d at 138.

***Relevance and Need.*** The evidence sought is relevant to central issues in the Illinois case, including whether the May WTI Contract was trading at an artificial price on April 20, 2020. The need for discovery from Glencore is compelling because the information from the largest traders can best prove why there was no significant demand for the May WTI Contract at zero or negative prices. *See In re Honeywell Int'l Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (finding that a subpoena request seeking documents regarding a nonparty auditor's independence was "clearly relevant to a possible [] defense"); *F.T.C. v. Thomas Jefferson Univ.*, 2020 WL 3034809, at *2 (E.D. Pa. June 5, 2020) (finding "compelling need for [subpoenaed] information, as it cannot be acquired from any of the parties").

***Breadth, Time Period, and Particularity.*** The subpoena is narrowly tailored to obtain only information "sufficient to show" Glencore's trading of one product (the May WTI Contract)

11

on two days (April 20 and 21). Requests 1 through 3 seek information about the basic characteristics of Glencore's trading of the May WTI Contract. Requests 4 through 9 seek information about Glencore's knowledge, communications, trading strategies, and purchases of crude oil with respect to the May WTI Contract on April 20, 2020, including when Glencore knew that prices could go negative and how such knowledge impacted Glencore's trading that day. Each subpoena request is specific, discrete, and narrowly tailored in terms of subject matter and temporal scope. *Compare Rinaldi v. NICE*, 2020 WL 4340640, at *5 (S.D.N.Y. July 27, 2020) (finding plaintiff's third party subpoena requests "relevant, proportional to this case and narrowly tailored in content and time" where requests sought information on one topic during an eight-month time period) *with GEICO v. Mayzenberg*, 2018 WL 10517074, at *3 (E.D.N.Y. June 29, 2018) (finding subpoenas issued to nonparties as "overbroad in that they seek documents and information without a temporal limitation that is proportional to the needs of this case").

***Proportionality.*** Finally, it would be proportionate for Glencore to produce this discovery. The WTI futures contract is "a commodity that is central to the functioning of the world economy," and litigation over whether a WTI contract had an artificial price on a historic day is "of national, and indeed international, import." *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at **5, 7. The amount in controversy is high: the Illinois plaintiff alleges the traders associated with Vega made hundreds of millions of dollars in profit on April 20, 2020, and demands, among other things, actual and treble damages on behalf of itself and the putative class. Ex. 2 at ¶ 255, Prayer for Relief, ¶¶ J, K. The amount in controversy in the Illinois case therefore exceeds $1 billion, which weighs in favor of discovery. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 710 (E.D. Mich. 2017) (finding proportionality factors "tip[ped] far towards" permitting the

12

requested nonparty discovery where, inter alia, the amount in controversy included treble damages and "the potential for a multi-million dollar verdict"), *aff'd*, 2017 WL 3116261 (E.D. Mich. July 21, 2017); *see also In re Countrywide Fin. Corp. Sec. Litig.*, 2010 WL 1640188, at *2 (S.D.N.Y. Apr. 12, 2010) (finding that a nonparty subpoena seeking a "limited group of documents" was not "unduly burdensome or disproportionate" and "would be very relevant to the issues in the case because the documents would reflect a contemporaneous analysis of the value of [a company's assets]").

### III. Any Trade Secrets or Confidential Information Will Be Protected by The Illinois Court's Existing Protective Order

The Illinois court's protective order can protect any trade secrets or confidential information in Glencore's production. "[T]here is no absolute privilege for trade secrets and similar confidential information." *Fed. Open Mkt. Comm. of the Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979). As such, "[t]he Federal Rules provide that the court 'may'—but is not required to—quash or modify a subpoena that requires disclosure of 'a trade secret or other confidential research, development, or commercial information." *Rios v. Ramage*, 2020 WL 6701206, at *6 (D. Kan. Nov. 13, 2020) (quoting Fed. R. Civ. P. 45(d)(3)(B)(i)).

To the extent that Glencore is concerned about producing information it claims is confidential or amounts to trade secrets, the Court should find that any concerns about disclosing such information are addressed by the protective order that governs discovery in the Illinois case. Ex. 8. Courts regularly compel production of such discovery where it is relevant and necessary to the underlying action and the nonparty's interests are sufficiently protected by a confidentiality or protective order. *See, e.g., Conopco, Inc. v. Wein*, 2007 WL 2438390, at *3 (finding that the risk of disclosing a nonparty's "confidential financial information" was "no reason to quash the subpoena" because of the existing confidentiality order in the case); *In re*

13

*Subpoena Duces Tecum Served on Bell Commc'n. Rsch.*, 1997 WL 10919, at *3 (directing nonparty to produce all requested documents because all "proprietary documents would be subject to the Protective Order approved by the district judge in the underlying case"); *In re Subpoenas to Plains All Am. Pipeline, L.P.*, 2014 WL 204447, at *6 (agreeing that subpoenaed nonparty "has not shown an identifiable risk that its information, albeit sensitive, will be used for improper business purposes in violation of the protective order" in the case).

The protective order in the Illinois case allows parties and nonparties to designate discovery material as "Confidential" or "Highly Confidential," and contains restrictions on disclosure for each designation. Ex. 8 at §§ 2.1, 2.2, 4.2, 4.3. The restrictions for "Highly Confidential" designations are akin to attorneys' eyes only and will not permit any of the parties (including Mish, Spires, or the ten traders) to view Glencore's highly confidential information. (*Id*. at § 4.3.) The protective order limits use of discovery material to the Illinois case and expressly forbids it from being used for any "business, commercial, or other purpose." *Id*. at §§ 1.1, 4.1. Its terms are binding on all lawyers, parties, and persons subject to its terms. *Id.* at § 13.3. And any consultants, experts, or witnesses who may receive or view designated material must sign the attached acknowledgement and agreement to be bound by its terms, subject to "sanctions and punishment in the nature of contempt" for any violation. *Id.* at §§ 4.2(e), 4.2(g), 4.3(e), 4.4, and Attachment A. These provisions sufficiently protect against the misuse of any discovery that may qualify as Glencore's trade secrets or confidential commercial information.

## CONCLUSION

For the foregoing reasons, Vega and Spires respectfully request that the Court grant their Motion to Compel and (1) compel Glencore to comply with the subpoena issued by Vega and Spires within ten business days, and (2) grant any other relief the Court deems appropriate. A proposed order is attached to this memorandum.

Dated: March 22, 2024

Respectfully submitted,

VEGA CAPITAL LONDON LIMITED AND ADRIAN SPIRES

By: /s/ Michael P. Kelly

| | |
|---|---|
| Michael P. Kelly | Elpitha B. Lambros* |
| AKERMAN LLP | AKERMAN LLP |
| 750 Ninth Street, N.W., Suite 750 | 71 S. Wacker Drive, 47th Floor |
| Washington, DC 20001 | Chicago, IL 60606 |
| (202) 393-6222 | (312) 634-5700 |
| michael.kelly@akerman.com | elpitha.lambros@akerman.com |
| | |
| *Attorneys for Vega Capital London Limited and Adrian Spires* | *Motion for admission *pro hac vice* forthcoming |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on March 22, 2024, a true and correct copy of the foregoing Movants Vega Capital London Limited and Adrian Spires' Memorandum in Support of Their Motion to Compel was served upon the following counsel for Glencore Ltd. by email and Federal Express:

Peter Behmke, Esq.
Barron M. Flood, Esq.
Herbert Smith Freehills New York LLP
450 Lexington Avenue
New York, NY 10017
(917) 542-7600 (phone)
(917) 542-7601 (facsimile)
peter.behmke@hsf.com
barron.flood@hsf.com

                                        /s/ Michael P. Kelly
                                        Michael P. Kelly